USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/4/16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------x

MICHELLE CASE,

                Plaintiff,

     v.

ROBERT CLIVILLES, BARBARA
WARREN-PACE, and JONATHAN BLANK,

                Defendants.
------------------------------------------x

12-cv-8122 (TPG)

**OPINION**

Plaintiff Michelle Case moves for leave to amend the second amended complaint to add a fifth cause of action for a violation of Section 487 of the New York Judiciary Law against defendants Jonathan Blank, Robert Clivilles, and Barbara Warren-Pace as trustee of the Cole Trusts. In effect, Case is seeking leave to file a third amended complaint.

The claims in this case pertain to a recording agreement ("Agreement") between artist Michelle Case and Cole/Clivilles Music Enterprises ("CCME"), a production company that was owned and operated by Robert Clivilles and David Cole. All defendants oppose Case's motion.

For the reasons discussed herein, Case's motion for leave to further amend the complaint is DENIED.

Background

**A. Factual History**

Plaintiff Michelle Case, also known as Michelle Visage, is a musical recording artist. Her relationship with Robert Clivilles and the late David Cole arose from her career in the music industry. In 1992, as part of the musical group The SOUL SYSTEM, Case signed an exclusive recording agreement ("Agreement") with Cole/Clivilles Music Enterprises ("CCME"), a partnership formed by Clivilles and Cole. Second Am. Compl. at 3, ¶5; Clivilles and the Cole Trusts' Answer to Second Am. Compl. at 2, ¶2.[1]

An unexecuted version of the Agreement shows that Case was represented by attorney David Mantel in conjunction with the Agreement. Second Am. Compl. Ex. B. Both Case and Blank acknowledge that Blank did not represent Case in conjunction with the Agreement. Id. at 3, ¶6; Proposed Third Am. Compl. at 3, ¶6; Blank's Answer to Second Am. Compl. at 1, ¶4. At the time of the Agreement, Blank represented CCME on various matters. Second Am. Compl. at 3, ¶6; Proposed Third Am. Compl. at 3, ¶6.

In 1992, while bound by the Agreement, Case co-wrote and performed a song entitled "It's Gonna be a Lovely Day." Second Am. Comp. at 3, ¶7. CCME entered into an agreement with Artista Records, Inc. ("Artista") to distribute the song, which was released as a single and appeared on the soundtrack for the

---

[1] Case's second and third amended complaints each include several different sets of numbered paragraphs. The answers to the complaint follow the same structure. For that reason, the Court will cite to both the page and the paragraph number of the complaint and answers.

2

movie "The Bodyguard." *Id.* The Agreement stated that Case was to receive seven-seventeenths (7/17) of the royalties CCME collected on "It's Gonna Be a Lovely Day." *Id.* The Agreement also required Case to voice any objections to the royalty payments within two years of payment. *Id.* at Ex. B. Case received the royalty checks due to her from 1992–1996. *Id.* at 4, ¶9.

In 1995, Cole passed away, leaving his interest in CCME to the Cole Trusts, administered by trustee Barbara Warren-Pace. Clivilles and the Cole Trusts' Answer to Second Am. Compl. at 2, ¶3. CCME was dissolved upon Cole's death, and Clivilles began wrapping up CCME's business. *Id.* at 4, ¶12. Pursuant to Blank's representation of CCME, from 1996–2003, Blank distributed 7/17 of the royalty payments for "It's Gonna Be a Lovely Day" to Case. Second Am. Compl. at 4, ¶11. Case received her royalty payments from 1996–2003. *Id.*

In 2008, Case informed Warren-Pace, as trustee for the Cole Trusts, that she had not been paid royalties for "It's Gonna Be a Lovely Day." *Id.* at 6, ¶20. Warren-Pace computed the royalties owed to Case by the Cole Trusts for the period of 2005–2008 and paid Case. *Id.* Warren-Pace calculated that the Cole Trusts owed Case one half (1/2) of what she was due because the Cole Trusts received one half of the royalty payments from Artista. *Id.* at 8, ¶1. Therefore, Warren-Pace, on behalf of the Cole Trusts, paid Case one half (1/2) of the seven-seventeenths (7/17) of the royalty payments for 2005–2008. *Id.* The Cole Trusts have also paid Case one half (1/2) of the royalties due for the period of 2008–2012. *Id.*

Case states that CCME encouraged her to use Blank as her attorney in conjunction with her endeavors in the entertainment business. *Id.* at 3, ¶ 6. Case believed Blank to be her lawyer from 1989 until this litigation began in 2012. *Id.*; Proposed Third Am. Compl. at 15, ¶10. Case's proposed complaint is inconsistent as to whether she believes she is in an ongoing attorney-client relationship with Blank with regards to matters outside of this litigation. *Compare* Proposed Third Am. Compl. at 3, ¶6, *with id.* at 15, ¶10. Case originally states that "[t]o this day, [Case] considers Jonathan Blank her lawyer," *id.,* at 3, ¶6, but later states that Blank ceased to be her lawyer "at the filing of the original complaint in 2012," *id.,* at 15, ¶10. At any rate, sometime after August 2003, Blank told Case that Clivilles was having Artista audited. Second Am. Compl. at 5, ¶16. In 2009, Blank met with Case's husband and informed him that Clivilles "knew that he was not supposed to take the full cost of the video from the plaintiff" and that Clivilles felt he should "stop paying" Case royalties from "It's Gonna Be a Lovely Day." *Id.* at 7, ¶ 22.

**B. Procedural History**

Plaintiff filed the original complaint in the U.S. District Court for the Central District of California against Clivilles and Warren-Pace, as trustee of the Cole Trusts, on May 7, 2012. Case filed the first amended complaint on July 5, 2012.

Clivilles and the Cole Trusts filed a motion to dismiss the first amended complaint for lack of personal jurisdiction and improper venue. Upon finding

4

that a transfer of venue was warranted, the District Court for the Central District of California transferred the case to this Court on October 24, 2012.

Following the transfer, Clivilles and the Cole Trusts moved to dismiss the first amended complaint. On September 26, 2013, this Court adopted the magistrate judge's report and recommendation, thereby dismissing Case's initial breach of fiduciary duty and infliction of emotional distress claims with prejudice. Case's fraud claims were also dismissed, though some were dismissed without prejudice.

Case has, at times, proceeded *pro se* in this litigation. On March 3, 2014, Case filed a letter with this Court stating that she wished to retain counsel and would do so by April 2, 2014. Case did not retain counsel at that time. On April 9, 2014, this Court entered a Rule 16(f) case management plan and scheduling order stating that no additional causes of action or defenses could be added after April 30, 2014 without leave of the Court.

On April 30, 2014, in compliance with the scheduling order, Case filed her second amended complaint, which added Blank as a defendant. The second amended complaint alleges four counts. In the first count, Case alleges a breach of contract claim against Clivilles and the Cole Trusts. In the second and third causes of action, Case alleges accounting and fraud claims against Clivilles. In the fourth claim, she alleges professional negligence against Blank.

The Court set a scheduling conference for January 14, 2015. Due to scheduling conflicts, the conference was delayed several months. On February

24, 2015, the Court noted that this case needed to move forward and that no extensions would be granted absent extraordinary circumstances. At the scheduling conference on April 8, 2015, the Court entered a new scheduling order, but did not renew the period during which parties could add claims. On May 4, 2015, the Court received notice from attorney Bruce Bealke that he wished to represent Case in this matter, but Bealke waited until August 17, 2015 to seek permission to appear.

On September 1, 2015, seventeen months after the initial deadline to amend the pleadings, Case filed for leave to amend the complaint. On September 2, 2015, the Court advised Case that any motions to amend would not alter the summary judgment schedule unless Case showed good cause.

In the proposed third amended complaint, Case seeks to add a claim against Blank, Clivilles, and the Cole Trusts for violation of New York Judiciary Law Section 487 and alter the request for relief on the professional negligence claim from 2002–2012, as pled in the second amended complaint, to 1992–2012. All defendants oppose Case's motion for leave to amend the complaint.

In accordance with the scheduling order, Clivilles and the Cole Trusts filed a joint motion for summary judgment on September 11, 2015. Blank filed a motion to dismiss on September 14, 2015.

Discussion

Case's motion for leave to file a third amended complaint seventeen months after the deadline is denied because it is not supported by good cause. The proposed amendment would also be denied as futile even if it were timely or supported by good cause.

**A. Failure to Show Good Cause**

Case has failed to show good cause to amend her complaint, as required. The standard for amending a complaint is generally quite lenient, as the Court is instructed to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). But once the Court has entered a scheduling order pursuant to Rule 16(b), a party may only amend a motion, thereby altering the scheduling order, "for good cause." Fed. R. Civ. P. 16(b)(1). A district court has discretion to deny leave to amend after the scheduling order deadline if the party seeking to amend fails to establish good cause. *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000).

A showing of good cause "depends on the diligence of the moving party," *Parker*, 204 F.3d at 340, and requires a showing that "the deadlines [could not[ be reasonably met despite [the party's] diligence," *Rent-A-Center Inc. v. 47 Mamaroneck Ave. Corp.*, 215 F.R.D. 100, 104 (S.D.N.Y. 2003). A party has not been diligent if the amendment is based on information the party knew at the time she commenced the action. *Parker*, 204 F.3d at 341. A proposed amendment that is "devoid of any allegations or explanations of *newly discovered*

7

facts" pertaining to the proposed amendment does not meet the standard required to show diligence. *Guity v. Uniondale Union Free Sch. Dist.*, No. 12-cv-1482, 2014 WL 795576, at *7 (E.D.N.Y. Feb. 27, 2014).

In addressing this motion, the Court takes into consideration Case's initial status as a *pro se* litigant. "A party appearing without counsel is afforded extra leeway in meeting the procedural rules governing litigation." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). *Pro se* litigants are afforded that leniency in the context of a Rule 16(b) inquiry. *See Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). But *pro se* litigants are, nonetheless, expected to make efforts to comply with the procedural rules of the Court. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006). A district court does not abuse its discretion by denying a *pro se* litigant's motion to amend if the *pro se* litigant cannot show good cause, *Smith v. New York City Dep't of Educ.*, 524 F. App'x 730, 733 (2d Cir. 2013), particularly if the *pro se* litigant's proposed amendment is futile, *Wolk v. Kodak Imaging Network, Inc.*, 840 F. Supp. 2d 724, 737–38 (S.D.N.Y. 2012).

In *Wolk*, the court denied a *pro se* plaintiff's motion to amend because she failed to show good cause. *Id.* Plaintiff sought to add a cause of action for unfair competition and a request for punitive damages. *Id.* Plaintiff could not show that her new claim relied on any facts unavailable to her when she brought the action. *Id.* While taking plaintiff's *pro se* status into consideration, the court still denied her motion to amend where she could neither show good

cause nor meet the more liberal standard for amending pleadings under Rule 15(a). *Id.*

Here, Case filed for leave to amend her complaint for a third time on September 1, 2015, seventeen months after the deadline set by the Court in the scheduling order. Due to this delay, Case has the burden of demonstrating good cause by establishing that she has been diligent. *Parker*, 204 F.3d at 340.

In support of her motion, Case cites *Mercado v. Division of New York State Police*, No. 96-cv-0235, 2000 WL 827676 (S.D.N.Y. June 27, 2000), and *Miskovitch v. Hostoffer*, No. 06-cv-1410, 2008 WL 783403 (W.D. Pa. Mar. 25, 2008), to show that as a *pro se* plaintiff, she should be afforded leave to amend her complaint. But the support Case cites is inapposite. Unlike in *Mercado*, Case did not seek permission for an extension days after the deadline, but waited seventeen months to seek leave to amend. *Mercado*, 2000 WL 827676, at *1. The plaintiff in *Mercado* also gave good reason for the delay: he needed extra time after attempting to find representation after his prior counsel withdrew. *Id.* Case gives no explanation for her delay other than the fact that she did not have a lawyer to alert her to the potential cause of action under Section 487. Case is also unlike the plaintiff in *Miskovitch*, who only sought leave to amend the complaint once, and whose amendment clarified the issues previously presented and eliminated defendants rather than adding claims, as Case seeks to do. *Miskovitch*, 2008 WL 783403, at *1.

Case's proposed third amended complaint seeks to add a cause of action against Blank that was available to her at the time she commenced this action, and continued to be available to her at the time of each of her previous amendments. Case seeks to add a new claim based on the same facts set forth in the second amended complaint. Case does not seek to alter the facts section at all. Based on the lack of new information presented, Case clearly knew of the facts underlying her proposed claim before the deadline. As in *Wolk*, Case's amendment is based on previously known facts and does not satisfy the good cause standard. *Wolk*, 840 F. Supp. 2d at 737. As such, the Court is justified in denying leave to amend the complaint after the scheduled deadline even when accounting for Case's *pro se* status. Case's motion for leave to amend is denied for failure to show good cause to amend the complaint seventeen months after the scheduling order deadline.

### B. Futility of the Proposed Amendment

Even if Case's motion for leave to amend the complaint were timely or supported by good cause, the proposed amendment would be denied as futile. Case seeks to add a claim against Blank under New York Judiciary Law Section 487 and against Clivilles and the Cole Trusts under the same law pursuant to vicarious liability. Case also seeks to change the period for which she seeks relief on her professional negligence claim from 2002–2012 to 1992–2012.

Under Rule 15(a), the Court may deny a motion to amend a pleading if the parties have exhibited "undue delay, bad faith or dilatory motive . . . , repeated

10

failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., [or] futility of amendment." *Dluhos v. Floating and Abandoned Vessel Known as "New York,"* 162 F.3d 63, 69 (2d Cir. 1998) (internal quotations omitted). An amendment is futile if the new claim could not survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Polanco v. NCO Portfolio Mgmt., Inc.*, 23 F. Supp. 3d 363, 369 (S.D.N.Y. 2014).

Pursuant to Rule 12(b)(6), the Court may dismiss a complaint if it does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In deciding whether a complaint states a plausible claim, the Court "accepts[s] as true all factual statements alleged in the complaint and draw[s] all reasonable inferences in favor of the non-moving party." *Polanco*, 23 F. Supp. 3d at 369 (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007)). The Court need not accept as true conclusory statements or allegations, which are insufficient to defeat a motion to dismiss. *Id.*

Case's amendment is futile because the proposed Section 487 claim is not plausible, even when construing the facts in Case's favor. Section 487 of the New York Judiciary Law states that an attorney is guilty of a misdemeanor if he "(1) Is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party; or (2) Willfully delays his client's suit with a view to his own gain; or, willfully receives any money or allowance for or

11

on account of any money which he has not laid out, or becomes answerable for." N.Y. Jud. Law § 487 (McKinney 2016). The conduct giving rise to the Section 487 claim must be egregious. *O'Callaghan v. Sifre*, 537 F. Supp. 2d 594, 596 (S.D.N.Y. 2008). Case's proposed third amended complaint does not clearly state which prong of Section 487 Case alleges Blank violated, so the Court will assess her proposed claim under both prongs.

A Section 487(1) claim may be established based on a singular act or decision, so long as the act is intended to deceive. *Polanco*, 23 F. Supp. 3d at 375. The language in Section 487(1) of the Judiciary Law requires intentional deceit of a party or a court in connection with a pending lawsuit. *O'Brien v. Alexander*, 898 F. Supp. 162, 168–69 (S.D.N.Y. 1995). Section 487(2) is directed at attorney misconduct based on the misappropriation of client funds. *Polanco*, 23 F. Supp. 3d at 375. To misappropriate client funds, an attorney must either receive funds from the client or receive funds on behalf of the client in the scope of representation. *Id.*

Case's Section 487(1) claim fails because her claim is not based on conduct that occurred in conjunction with an ongoing judicial proceeding. Case's Section 487 claim is premised on Blank's attempt to "deceive the plaintiff to deprive her on moneys due to the plaintiff," and his attempt to "deceive plaintiff . . . by not disclosing the explicit instructions of defendant Clivilles to illegally withhold moneys from the plaintiff." Proposed Third Am. Compl. at 14, ¶¶2–4. Even if Case's allegations are true, they cannot plausibly establish that Blank committed

12

deceit or collusion in conjunction with this, or any other, judicial proceeding because no lawsuit was pending when the events occurred. Therefore, the facts do not give rise to Section 487(1) liability. *O'Brien*, 898 F. Supp. at 168–69. As such, Case's proposed amendment to add a Section 487(1) claim would be dismissed and is futile.

Case's Section 487(2) claim also fails to state a plausible claim because plaintiff has not alleged that Blank delayed Case's lawsuit to benefit himself financially or that Blank misappropriated funds he received in his role as Case's attorney. When Blank handled Case's royalty payments, he did so on behalf of CCME, not as Case's attorney. Proposed Third Am. Compl. at 14, ¶3. Case's proposed amendment lacks any allegation that Blank misappropriated money given to him by Case or that he received in his role as Case's attorney, so her Section 487(2) claim is not plausible. *Polanco*, 23 F. Supp. 3d at 375.

Case's Section 487 claim against Clivilles and the Cole Trusts, which is based on vicarious liability for Blank's actions, necessarily fails because Case has not alleged facts that give rise to a plausible claim against Blank. Moreover, this Court's jurisprudence "cut[s] against the notion of *respondeat superior* liability under Section 487" and specifically prohibits holding clients derivatively liable for the actions of an attorney. *Id.* at 377. For these reasons, Case's Section 487 claim cannot withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) and is futile.

13

Case also seeks to add time to the period for which she seeks relief for her professional negligence claim against Blank. Case's proposed amendment seeks relief for the added period of 1992–2002. Case has not alleged any professional negligence tied to events occurring between 1992 and 2002, so the amendment would be dismissed as futile. Case states that she received royalties from 1992–2003. The only alleged disputes during that time period involve: 1) insufficient royalty statements, and 2) the reduction of royalties for the full cost of the video for "It's Gonna Be a Lovely Day" in 1992. Because Blank did not represent Case in conjunction with the Agreement, any issues with the royalty statements from the Agreement fall outside of his representation of Case and cannot be the basis for a plausible professional negligence claim. Similarly, the video cost reduction in 1992 cannot establish a plausible claim for professional negligence. The Court's September 26, 2013 order correctly stated that "paragraph 10 of the Agreement explicitly allows for the cost reduction," so the deduction was proper and cannot be a basis for which to hold Blank professionally liable. Blank's statements regarding the Artista audit did not take place until 2002. Thus, Case's proposed amendment fails to establish a plausible claim for professional negligence for conduct that occurred between 1992 and 2002.

Construing the facts in the proposed amended complaint in Case's favor, the proposed amendment could be read to allege that Blank had a conflict of interest in representing Case on other matters while acting as "paymaster" for CCME from 1992–2002. The proposed amendment also cannot withstand a motion to dismiss on that theory. Case's proposed third amended complaint does

not list any specific matter on which Blank represented her, so it lacks sufficient information to state a plausible claim for conflict of interest. Because the claim for professional negligence against Blank cannot plausibly be based on any events occurring before 2002, amending the claim for relief to add the period of 1992–2002 would be futile."

Case's motion for leave to amend the complaint, filed after the deadline for amendments, is not supported by good cause and, even if it were, the amendment would be futile. Accordingly, Case's motion for leave to further amend the complaint is DENIED.

This opinion resolves the item listed as docket number 95 in this case.

SO ORDERED

Dated: New York, New York
October 4, 2016

                                                Thomas P. Griesa
                                                U.S. District Judge